FILED

JAN 22 2015

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 15-30006-DRH |
| vs. ) | |
| ) | |
| KWA MISTER, ) | |
| ) | Title 18, United States Code, |
| Defendant. ) | Section 1001 |

### INDICTMENT

**THE GRAND JURY CHARGES:**

#### INTRODUCTION

At all relevant times:

a) In 2005, the United States Department of Justice convened a series of meetings to address concerns impacting minorities in the construction industry. An agreement was reached where the Illinois Department of Transportation (IDOT) agreed to provide a minimum of $400,000 per year over five years for a total of $2 million to fund a construction training program to increase the growth and development of minority businesses and maximize the number of minority workers on IDOT projects.

b) The Mississippi River Bridge Project (MRB) was a construction project to create a new 4-lane bridge between Illinois and Missouri across the Mississippi River one mile north of the Martin Luther King Bridge. Funding for the project came from federal resources as well as Illinois and Missouri resources.

c) The Highway Construction Preparatory Training Program (HCPTP) in Illinois was opened in September of 2008. It is a program that was designed to help ensure that a

1

diversified, properly trained highway construction workforce was available for future road construction projects including the MRB Project. Students participating in this construction training program were required to complete an 8-week (160-hour) hands-on, performance-based training that includes a mandatory reading and basic mathematics primer.

      d)      The IDOT entered into an intergovernmental agreement with Southern Illinois University at Edwardsville (SIUE) to be the fiscal agent for the Highway Construction Preparatory Training Program.

      e)      **KWA MISTER** was the Director/Project Manager at the Small Business Development Center at SIUE and served as the project manager for the Highway Construction Preparatory Training Program.

      f)      An investigation and an audit revealed that **KWA MISTER** obtained five contracts between SIUE and Phoenix Support Services for Phoenix Support Services to purportedly serve as an independent consultant to assist with the training program.

      g)      From March 2010 through January 2011, an audit discovered five (5) Purchase Orders, five (5) Contracts, and at least four (4) Justification for Sole Source Purchase or Contract forms concerning the procurement of services from "L. A. S" [name removed]., Director, d/b/a Phoenix Support Services. The amount of the contracts totaled $85,500. Through SIUE, the Highway Construction Preparatory Training Program was billed $85,500 by Phoenix Support Services purportedly for services provided to the program. SIUE paid Phoenix Support Services $85,500 for these charges. IDOT was billed and has reimbursed SIUE $85,300 for costs from Phoenix Support Services.

      h)      The procurement of these contracts with Phoenix Support Services was initiated by the Program Manager for the Highway Construction Preparatory Training Program,

2

**KWA MISTER**. **KWA MISTER** procured the services of his mother, L. A. S., for sole source contracts and concealed the family relationship and the potential conflict of interest from SIUE. When the propriety of the contracts with Phoenix Support Services was under investigation by SIUE, **KWA MISTER** lied to SIUE as to whether the owner of Phoenix Support Services was his mother.

    i)    In all five of the contracts signed by **KWA MISTER** and by L. A. S., there was a conflict of interest certification which affirmed that there existed no actual or potential conflict of interest between the consultant's family, business, or financial interests and his or her services under the agreement.

    j)    An investigation was conducted by the Office of Executive Inspector General for the Agencies of the Illinois Governor. It was determined that **KWA MISTER** assisted in submitting invoices for L. A. S. d/b/a Phoenix Support Services and was paid a total of $85,500 from SIUE between 2008 and 2011 on the sole source contracts.

    k)    A federal criminal investigation was initiated to investigate **KWA MISTER's** activities as the project manager for the Highway Construction Preparatory Training Program and the issuance of sole source contracts.

    l)    SIUE General Counsel, Jeffrey McLellan, questioned **KWA MISTER** on several occasions and **KWA MISTER** falsely denied that L. A. S. of Phoenix Support Services was his mother. After an investigation it was subsequently confirmed that **KWA MISTER** is the son of L. A. S.

## COUNT 1

### FALSE STATEMENT TO THE UNITED STATES DEPARTMENT OF TRANSPORTATION, OFFICE OF INSPECTOR GENERAL AND U.S. DEPARTMENT OF LABOR, OFFICE OF LABOR RACKETEERING AND FRAUD INVESTIGATIONS

On or about May 19, 2014, in St. Clair County, within the Southern District of Illinois,

**KWA MISTER,**

defendant, did willfully and knowingly make, and cause to be made, materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of a department or agency of the United States by telling Special Agent Andrea Kropf of the United States Department of Transportation, Office of Inspector General and Special Agent Christopher Roberson, U.S. Department of Labor, Office of Inspector General, Office of Labor Racketeering and Fraud Investigations, during an interview that if SIUE had told the agents that they had asked **KWA MISTER** about the contracts with his mother, it was not true. The statement was material in that there was a federal criminal investigation into **KWA MISTER's** involvement in directing sole source contracts to Phoenix Support Services and to what extent **KWA MISTER** tried to conceal a family relationship with the owner of Phoenix Support Services and tried to conceal a potential conflict of interest. The statement and representation was false because, as **KWA MISTER** then and there knew, **KWA MISTER** had denied to the General Counsel's Office of Southern Illinois University on several occasions that the owner of Phoenix Support Services was his mother.

All in violation of Title 18, United States Code, Section 1001.

## COUNT 2

### FALSE STATEMENT TO THE UNITED STATES DEPARTMENT OF TRANSPORTATION, OFFICE OF INSPECTOR GENERAL AND U.S. DEPARTMENT OF LABOR, OFFICE OF LABOR RACKETEERING AND FRAUD INVESTIGATIONS

On or about July 24, 2014, in St. Clair County, within the Southern District of Illinois,

**KWA MISTER,**

defendant, did willfully and knowingly make, and cause to be made, materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of a department or agency of the United States by telling Special Agent Andrea Kropf of the United States Department of Transportation, Office of Inspector General and Special Agent Christopher Roberson, U.S. Department of Labor, Office of Inspector General, Office of Labor Racketeering and Fraud Investigations, during an interview that he never denied to SIUE officials that L. A. S., was his mother or the owner Phoenix Support Services. The statement was material in that there was a federal criminal investigation into **KWA MISTER's** involvement in directing sole source contracts to Phoenix Support Services and to what extent **KWA MISTER** tried to conceal a family relationship with the owner of Phoenix Support Services and tried to conceal a potential conflict of interest. The statement and representation was false because, as **KWA MISTER** then and there knew, **KWA MISTER** had denied to the General Counsel's Office of Southern Illinois University on several occasions that the owner of Phoenix Support Services was his mother.

All in violation of Title 18, United States Code, Section 1001.

███████████████
FOREPERSON

_____
STEPHEN R. WIGGINTON
United States Attorney
Southern District of Illinois

_____
NORMAN R. SMITH
Assistant United States Attorney

Recommended bond: $25,000 unsecured.